AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

| LODGED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| 3/2/2022 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: ___DTA___ DEPUTY |

# UNITED STATES DISTRICT COURT

for the

Central District of California

| FILED |
| --- |
| CLERK, U.S. DISTRICT COURT |
| 03/02/2022 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: ___M.B.___ DEPUTY |

United States of America

v.

CHRISTOPHER JOHN RICCI,

Defendant.

Case No.  8:22-mj-00175-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of January 4, 2022 in the county of Orange in the Central District of California, the

defendant violated:

|            *Code Section*          |            *Offense Description*          |
| --- | --- |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/* Daniel Thompson, Special Agent
*Complainant's signature*

_____
Daniel Thompson, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    ___March 2, 2022___

_____
*Judge's signature*

City and state:   ___Santa Ana, California___

Honorable John D. Early, U.S. Magistrate Judge
*Printed name and title*

AUSA:   ___Faraz Mohammadi (x3599)___

### AFFIDAVIT

I, Daniel Thompson, being duly sworn, declare and state as follows:

## I.  INTRODUCTION

1.   I am a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been so employed since August 2001. I am currently assigned to the ATF Los Angeles Field Division, Santa Ana Field Office.  I am charged with investigating violations of federal arson, explosives, and firearm laws and regulations.  I regularly refer to these laws and regulations during the course of my official duties.  As an ATF SA, I have assisted in and conducted numerous investigations involving criminal street gangs, possession of firearms and ammunition by prohibited persons, possession of stolen firearms, possession of machineguns, and the illegal trafficking of firearms and narcotics.  I have also participated in numerous federal and state search and arrest warrants involving individuals engaged in unlawfully possessing and trafficking firearms and narcotics. I am a graduate of the Criminal Investigator Training Program instructed at the Federal Law Enforcement Training Center and have completed specialized training at the ATF National Academy in the fields of arson, explosives, and firearms.

## II. PURPOSE OF AFFIDAVIT

2.   This affidavit is made in support of a criminal complaint and arrest warrant for Christopher John Ricci

("RICCI") for a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

3.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III.  SUMMARY OF PROBABLE CAUSE

4.    Costa Mesa Police Department Detective J. Santibanez identified an advertisement posted by RICCI on Craigslist.com, which, based on his training and experience, Detective Santibanez understood to be offering fentanyl for sale. Detective Santibanez, acting in an undercover capacity, contacted RICCI by phone and text message to arrange a meeting to purchase two grams of fentanyl from RICCI.  RICCI informed Detective Santibanez that RICCI was also selling firearms.

5.    On January 4, 2022, RICCI instructed Detective Santibanez to meet RICCI at the Howard Johnson Hotel in Fullerton, California and go up to Room 451 of the hotel. Detective Santibanez instead asked that RICCI meet him at an adjacent property, where Detective Santibanez purchased approximately two grams of suspected fentanyl from RICCI in a

controlled buy.  During the transaction, RICCI told Detective Santibanez that RICCI had firearms for sale inside his hotel room.

6.    Shortly thereafter, RICCI was arrested by law enforcement, which had previously confirmed that RICCI was a convicted felon on supervised release subject to search and seizure conditions.  Law enforcement then utilized a key recovered from RICCI's pocket to search RICCI's hotel room, Room 451 at the Howard Johnson Hotel.  Upon searching the hotel room, law enforcement recovered additional suspected fentanyl, digital scales, five firearms, numerous rounds of ammunition, a ballistic vest, and documents containing RICCI'S name.

7.    On or about January 6, 2022, law enforcement learned that the five firearms recovered from RICCI'S hotel room had been stolen from a storage unit belonging to an employee of the Naval Criminal Investigative Service who is currently stationed in the Middle East.

8.    An ATF interstate nexus expert later confirmed that the firearms and ammunition seized from RICCI's hotel room had traveled interstate, or from another country to the United States, before being recovered in California.

IV. <u>STATEMENT OF PROBABLE CAUSE</u>

A.    **January 4, 2022 Arrest of RICCI**

9.    On December 29, 2021, at approximately 2:38 p.m., Detective J. Santibanez of the Costa Mesa Police Department ("CMPD") Special Investigations Unit ("SIU") located a Craigslist.com post advertising what, based on his training and

experience, Detective Santibanez understood to be the sale of fentanyl.  The person advertising the sale of fentanyl was later identified to be RICCI.  Detective Santibanez, acting in an undercover ("UC") capacity, contacted the phone number listed on the advertisement.  Later that same day, RICCI replied, "what up," but Detective Santibanez did not reply.

10.  On January 1, 2022, at approximately 4:23 p.m., Detective Santibanez received another text message from RICCI stating, "Do u still need that," which Detective Santibanez interpreted as RICCI asking if he still needed fentanyl.  A couple minutes later, RICCI called Detective Santibanez, but Detective Santibanez did not answer.

11.  On January 3, 2022, at approximately 11:11 a.m., Detective Santibanez sent RICCI a text message informing RICCI that Detective Santibanez would get a hold of him the following day.  RICCI replied to the text by asking for Detective Santibanez's name, a picture of him holding his identification card next to his face, and his social media account.  Detective Santibanez did not immediately reply to the request.

12.  On January 4, 2022, at approximately 1:37 p.m., Detective Santibanez sent RICCI a text message providing him with his UC name.  Detective Santibanez also called RICCI, but RICCI did not answer.  A couple hours later, RICCI texted, "Yo im right whats happening."  Detective Santibanez asked RICCI if he was "around" and indicated that he was trying to "pick up," referring to wanting to purchase narcotics.  RICCI then called Detective Santibanez, who answered.  Due to RICCI calling

unexpectedly, Detective Santibanez was not able to record the ensuing phone conversation.

13.   During the call, RICCI asked how much fentanyl Detective Santibanez was trying to buy.  Detective Santibanez told RICCI he was looking to buy two grams.  RICCI agreed to sell Detective Santibanez two grams of fentanyl for $240.00. Detective Santibanez attempted to get RICCI to lower the price, but RICCI refused.

14.   RICCI also asked if Detective Santibanez was a gang member.  Detective Santibanez told RICCI he was a gang member. RICCI stated he was known as "Casper" from the "Travelers"[1] criminal street gang based out of the City of Anaheim.  RICCI requested that Detective Santibanez send him a picture of himself holding his identification card but said that since Detective Santibanez was also a gang member he did not have to show him his social media account.  Detective Santibanez told RICCI he would send him the requested information, and RICCI told Detective Santibanez that he would send him the address of where to meet.

15.   RICCI also asked Detective Santibanez if he was interested in buying firearms.  RICCI named several different caliber rifles and pistols that he had available for purchase. RICCI also said he had ammunition and that the rifles and pistols had been stolen from a police officer.  RICCI further

---

[1]   Based on my training and experience, I know that the Travelers are a criminal street gang that operate in and around Anaheim, California.

explained that the firearms were currently being stored in a storage unit.  Detective Santibanez told RICCI he was not interested in buying firearms but would let him know if he knew of anyone that was.  RICCI and Detective Santibanez then ended their call.  CMPD SIU Sergeant J. Brown was present during Detective Santibanez's call with RICCI and was able to hear most of the conversation.

16.  Detective Santibanez sent RICCI a picture of his undercover identification card, and RICCI sent Detective Santibanez a text message with the address for the Howard Johnson Hotel located at 222 W. Houston Avenue in Fullerton, California.  Detective Santibanez texted RICCI that he would meet RICCI there in about one hour, to which RICCI agreed.

17.  Detective Santibanez next contacted an Anaheim Police Department ("APD") gang investigator and asked if he was familiar with anyone known by the moniker "Casper" from the Travelers criminal street gang.  The gang investigator told Detective Santibanez he was familiar with two gang members known by that moniker who are documented as Travelers street gang members, one being RICCI.  The gang investigator also informed Detective Santibanez that RICCI had outstanding warrants for his arrest and was currently on formal probation and subject to search and seizure conditions.  Detective Santibanez also reviewed a photograph of RICCI.

18.  Prior to meeting with RICCI, Detective Santibanez met with additional CMPD detectives to discuss the safe execution of the pending controlled narcotics purchase.  After meeting with

the other CMPD detectives, Detective Santibanez drove to the
Howard Johnson Hotel to meet with RICCI.

19.   Prior to arriving at the hotel, Detective Santibanez
turned on his hidden audio/video recorder.  At approximately
5:17 p.m., Detective Santibanez arrived and parked at a hotel
adjacent to the Howard Johnson Hotel.  Detective Santibanez sent
RICCI a text message letting him know he had arrived.  A few
minutes later, Detective Santibanez called RICCI and spoke with
him over the phone, again letting RICCI know he had arrived.
RICCI asked Detective Santibanez to go up to Room 451 of the
Howard Johnson Hotel.  Detective Santibanez told RICCI he could
not go up to the room and requested RICCI walk down to meet with
him in the parking lot.  RICCI ultimately agreed to meet in the
parking lot.

20.   While still on the phone with Detective Santibanez,
RICCI asked how many "g's" Detective Santibanez wanted to buy,
which Detective Santibanez understood to be referring to grams
of fentanyl.  Detective Santibanez stated that he wanted to
purchase two grams.  RICCI explained to Detective Santibanez
that the reason he wanted him to go up to his room was because
RICCI had recently purchased an ounce of fentanyl but was not
happy with the quality.  RICCI added that he was waiting for his
supplier to arrive so he could exchange the fentanyl he had for
higher quality fentanyl.  Detective Santibanez told RICCI he
would buy two grams of the fentanyl that RICCI currently had.
Detective Santibanez provided RICCI with his vehicle description
and told him where he was located.  RICCI agreed to complete the

transaction and said he would meet with Detective Santibanez shortly.

21.   After waiting several minutes, RICCI called Detective Santibanez and told him he was at the front of the hotel. Detective Santibanez told RICCI he was parked at an adjacent hotel.  RICCI again informed Detective Santibanez that he was at the Howard Johnson Hotel but would be walking to where Detective Santibanez was parked.  RICCI provided Detective Santibanez with his clothing description.

22.   As soon as Detective Santibanez hung up the phone, he saw RICCI walking towards his vehicle.  Detective Santibanez recognized RICCI based on his discussion with the APD gang investigator and his review of RICCI's photograph.  Detective Santibanez greeted RICCI through his open driver's side window. RICCI walked over to the vehicle, opened the front passenger door, and sat down in the front passenger seat.  RICCI immediately asked Detective Santibanez to drive him to the back of the hotel, but Detective Santibanez refused.

23.   Detective Santibanez asked RICCI if he had the requested fentanyl.  RICCI stated he did.  RICCI said he wanted to return the "piece"[2] of fentanyl he had.  Detective Santibanez told RICCI he could not wait and had to leave because he had been parked at the location for a while.  RICCI began reaching in his pockets, removing items, and placing them on his lap. RICCI next opened the front passenger door and stepped out of

---

[2]     Based on my training and I experience, I know that the term "piece" refers to an ounce.

the vehicle.  RICCI continued removing items from his pockets and placed them on the front passenger floorboard.  Detective Santibanez noticed RICCI place a large amount of money on the floorboard.  Detective Santibanez next observed RICCI place a small clear plastic baggie containing a white powdery substance on the front passenger seat.  Based on his training and experience, Detective Santibanez recognized the substance to resemble fentanyl.

24.  After Detective Santibanez took possession of the suspected fentanyl, RICCI told him he was reducing the price to $200.00.  Detective Santibanez next removed money from his pocket and handed it to RICCI.  RICCI took possession of the money which he placed together with the other bills he had previously removed from his pocket.

25.  As RICCI was placing all of his belongings back in his pockets, Detective Santibanez asked him about the firearms RICCI previously offered for sale.  RICCI immediately replied, "I got them."  Detective Santibanez next asked RICCI if he could look at them.  RICCI replied, "I offered you to come upstairs perro." Detective Santibanez asked RICCI if the firearms were in his room to which RICCI replied, "Yeah."  Detective Santibanez then told RICCI he had a friend who might be interested in purchasing the firearms and asked which firearms he had.  RICCI replied, "I got them all," which Detective Santibanez understood to be referring to the list of firearms RICCI had described during the prior phone call with Detective Santibanez.

26.   RICCI asked if Detective Santibanez wanted to go up to his room to look at the firearms at which time Detective Santibanez reminded RICCI that RICCI had previously told him the firearms were somewhere else.   RICCI replied, "Yeah at a storage unit but I didn't want to tell no one."   RICCI then received a phone call from a male whom he referred to as "Slick."   Based on the conversation RICCI was having with "Slick," Detective Santibanez believed "Slick" was RICCI'S fentanyl supplier. During the call, RICCI stepped out of the vehicle and walked away.

27.   Detective Santibanez then drove away from the area and informed other CMPD detectives that RICCI had just admitted to having the firearms inside of his hotel room.   CMPD detectives maintained surveillance on RICCI as he walked east towards Harbor Boulevard.   RICCI then walked eastbound across Harbor Boulevard and was eventually detained by CMPD inside of the T-Shirt Warehouse store located at 1620 S. Harbor Boulevard in Fullerton.   RICCI was subsequently placed under arrest for violating California Health & Safety code section 11351 (sales of narcotics) and pursuant to his outstanding warrants.

28.   CMPD detectives searched RICCI and located a black Samsung cellphone, a hotel room key, and $2,236.00 in cash on RICCI'S person.   Detective Santibanez later retrieved the $200.00 he had paid RICCI for the suspected fentanyl and booked the remaining $2,036.00 as evidence.   The cellphone and room key were also later booked into evidence.

29.  CMPD detectives then went to the lobby of the Howard Johnson Hotel and spoke with a front desk employee.  Detective Santibanez provided the employee with RICCI'S clothing description at which time the employee stated that the employee had recently observed RICCI leaving the front lobby in a hurry. CMPD detectives next walked up to Room 451 and maintained surveillance.

30.  As the detectives continued to surveil Room 451, Detective Santibanez observed a Hispanic male with a shaved head, goatee, and wearing baggy clothing walk up to Room 451 and knock on the door.  The male stood outside of the room for several minutes and waited but no one opened the door.  The male eventually walked away.

31.  Sergeant Brown provided a hotel employee with the room key recovered from RICCI'S person.  The employee confirmed that the key belonged to Room 451 at the Howard Johnson Hotel.

32.  CMPD detectives, assisted by other law enforcement, utilized the hotel room key recovered from RICCI to open the door to Room 451, and searched the room.

33.  During the search of the hotel room, Detective Santibanez observed the following:

    a.  A clear plastic baggie containing suspected fentanyl (the baggie, including packaging, weighed approximately 24.20 grams);

    b.  20 blue pills of suspected morphine with "RD 70" imprinted on them;

    c.  Two digital scales;

d.   Suspected fentanyl on one of the digital scales (the suspected fentanyl weighed approximately 22.74 grams); .

e.   Three credit cards imprinted with the name "Christopher Ricci";

f.   $201.00 in cash on top of a desk;

g.   Pay/owe sheet listing Detective Santibanez's UC name;

h.   Green bulletproof vest;

i.   20 rounds of .45 caliber ammunition;

j.   52 rounds of 9mm caliber ammunition;

k.   52 rounds of .308 caliber ammunition; and

l.   A Godfather picture frame with "Christopher Ricci" written on the back.

34.   Detective Santibanez also found a large cardboard box located on the floor next to the bed, which contained several firearms and firearm accessories.  The following items were located inside of the box:

a.   Glock model 30 .45 caliber pistol, bearing serial no. RHX316;

b.   Glock model 26 9mm pistol, bearing serial no. XEF475;

c.   M1 Carbine .30 caliber rifle, bearing seral no. 2984902;

d.   Springfield Armory M1A .308 caliber rifle, bearing serial no. 400418;

e.   U.S. Springfield Armory model 1903 Mark1 30-06 rifle, bearing serial no. 1053717;

      f.    Seven 10-round 45 caliber Glock magazines; and

      g.    Nine rifle magazines.

Detective Santibanez seized all of the above-referenced items.

35.  A query of the Automated Firearm System showed all five firearms seized from RICCI's hotel room to be registered to an individual hereinafter referred to as "AB." On or about January 6, 2022, CMPD Detective Stocking telephonically interviewed AB who indicated that he is currently employed with the Naval Criminal Investigative Service and has been stationed in the Middle East for approximately one year.  AB further explained that the five firearms, his tactical vest, and other items, had been stored in a storage unit located in Irvine, California.  AB was unaware that his storage unit had been burglarized prior to the interview.  Detective Stocking later responded to the storage unit identified by AB and observed that the unit door and wall had been damaged with the door appearing to have been pried open.  A burglary report was taken by the Irvine Police Department.

**B.   RICCI'S Criminal History**

36.  On February 17, 2022, I reviewed certified conviction documents for RICCI and learned that on or about September 8, 2021, RICCI had been convicted for violations of California Health & Safety Code sections 11378 and 11351, in the Superior Court for the State of California, County of Orange, Case Number 21NF2360, a felony crime punishable by a term of imprisonment exceeding one year.

40.   I also reviewed a copy of RICCI'S criminal history report on the California Law Enforcement Telecommunications System, which indicates that RICCI has prior felony convictions for carjacking (2010), vandalism (2008), and taking a vehicle without the owner's consent/vehicle theft (2006).  RICCI also has numerous arrests and convictions for violating the terms and conditions of his supervised release in prior cases.

**C.    Interstate Nexus**

41.   On February 28, 2022, an ATF Interstate Nexus Expert examined photographs of the firearms and ammunition recovered from RICCI's hotel room and confirmed that all five firearms and 124 rounds of ammunition were manufactured outside the State of California, and thus, had to have moved through interstate or foreign commerce given that they were recovered in California.

//

//

//

## V.  <u>CONCLUSION</u>

42.  For the reasons described above, there is probable cause to believe that RICCI has committed a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

                                                /s/ Daniel Thompson
                                    _____
DANIEL THOMPSON
Special Agent, Bureau of
Alcohol, Tobacco, Firearms and
Explosives

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this  2nd  day of
March, 2022.

_____
HONORABLE JOHN D. EARLY
UNITED STATES MAGISTRATE JUDGE